UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NAVIGATORS MANAGEMENT CO., INC., and AMERICAN HOME ASSURANCE CO., <br><br> Plaintiffs, <br><br> v. <br><br> ST. PAUL FIRE AND MARINE INSURANCE CO., ESSEX INSURANCE CO. and ROYAL INDEMNITY CO., <br><br> Defendants. | No. 4:06CV1722-SNL |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO**
**DISMISS FIRST AMENDED DECLARATORY JUDGMENT COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs Navigators Management Company, Inc. ("Navigators") and American Home Assurance Company ("American Home") submit this Memorandum of Law in opposition to Defendants St. Paul Fire and Marine Insurance Company ("St. Paul") and Essex Insurance Company's ("Essex") motion to dismiss the First Amended Declaratory Judgment Complaint ("Amended Complaint") on the alleged grounds that no controversy exists sufficient to sustain jurisdiction under the Declaratory Judgment Act.

**RELEVANT PROCEDURAL BACKGROUND**

American Home and Navigators issued a certain policy of excess insurance (the "Bumbershoot Policy") that provides coverage to The American Milling Company for claims arising out of the M/V ANNE HOLLY allision with the Eads Bridge on April 4, 1998. American Home and Navigators have denied that Winterville Marine Services, Inc. ("Winterville") and John O. Johnson are insureds under the Bumbershoot Policy and have further

denied that Winterville or Captain Johnson are otherwise entitled to coverage thereunder for the claims against them as a result of the April 4, 1998 allision. *See generally* Exhibits "7" & "8."

American Home and Navigators brought a declaratory judgment action (the "First Declaratory Judgment Action") against Winterville and Captain Johnson in December 2004 in the United States District Court for the Southern District of New York seeking a declaration that neither Winterville nor Johnson is entitled to coverage under the Bumbershoot Policy for the claims arising out of the ANNE HOLLY allision with the Eads Bridge. *See Somerset Marine, Inc., et al. v. Winterville Marine Services, Inc., et al.,* 04 Civ. 9513 (S.D.N.Y.). Both Winterville and Captain Johnson defaulted. American Home and Navigators then moved for a default judgment against Captain Johnson but were enjoined from doing so against Winterville as a result of its having filed for bankruptcy.

Before the court could rule on the motion for a default judgment, President Riverboat Casino-Missouri, Inc. ("President Casino") and several of its insurers moved in June 2005 to intervene in the First Declaratory Judgment Action.[1] Almost immediately after they moved to intervene, President Casino and its insurers obtained an assignment (the "Assignment") from Captain Johnson of all of his purported interests in the Bumbershoot Policy. As a result of the Assignment, President Casino and its insurers also moved to set aside the entry of default against Captain Johnson. American Home and Navigators opposed both motions. Among other reasons, American Home and Navigators opposed the motion to intervene on the grounds that President Casino and its insurers could no longer intervene but, instead, were required to be substituted for Captain Johnson under Rule 25(c) of the Federal Rules of Civil Procedure. Accordingly,

---

[1] The insurers were: St. Paul, Essex, Royal Indemnity Company and HIH Casualty & General Insurance Limited.

President Casino and its insurers moved to be substituted for Captain Johnson. The court deferred ruling on the motion to set aside the entry of default.[2]

Pursuant to a limited stipulation, President Casino and its insurers were substituted in October 2005 for Captain Johnson in the First Declaratory Judgment Action. They then moved to dismiss the action for lack of personal jurisdiction over Captain Johnson and for improper venue. American Home and Navigators opposed that motion as well. To remedy the alleged defect in personal jurisdiction, American Home and Navigators elected to bring an action directly against Captain Johnson's assignees (*i.e.*, President Casino and its insurers) as they had become, in essence, the real parties in interest.

Accordingly, Plaintiffs brought the instant declaratory judgment action (the "Second Declaratory Judgment Action") against St. Paul, Essex and Royal Indemnity Company (collectively, the "Defendants") in the Southern District of New York (06 CV 0599) seeking a declaration that neither Captain Johnson nor the Defendants, as his as assignees, are entitled to coverage under the Bumbershoot Policy.[3] The Defendants then moved to dismiss the Second Declaratory Judgment Action for failure to join indispensable parties and for *forum non conveniens* (the "First Motion to Dismiss"). The Plaintiffs opposed the motion. In supplemental letter briefs, the Defendants alternatively argued that the action should be transferred to this

---

[2] The claims against Winterville were severed due to its bankruptcy filing.

[3] President Casino was not named as a party to the Second Declaratory Judgment Action because it too is in bankruptcy. HIH Casualty & General Insurance Limited was similarly not named as a party to the second action because it is, upon information and belief, in similar proceedings.

District pursuant to 28 U.S.C. § 1404(a).  Following a formal briefing on the issue, the action was transferred to this District.[4]

## RELEVANT FACTUAL BACKGROUND

Despite their many attempts to do so, St. Paul and Essex cannot escape the fact that both they and Captain Johnson have claimed numerous times that the latter is covered under the Bumbershoot Policy.

St. Paul and Essex first assert that "nowhere" in their motion to intervene in the First Declaratory Judgment Action did they "claim or allege that Plaintiff[s] owed coverage to Captain Johnson."  Defendants' Motion to Dismiss First Amended Declaratory Judgment Complaint ("Motion") at p. 3 ¶ 11.  This is a blatant misrepresentation.  Under the heading "The Same Coverage Applies to Captain Johnson,"  St. Paul and Essex's counsel stated in a declaration submitted in support of the motion to intervene:

> 25.    The Insurers' excess bumbershoot policy at issue expressly covers employees of assureds, and thus would also cover Captain Johnson individually for the Incident, independent of Winterville. . . .

Exhibit "1" at p. 7 ¶ 25.

Next, St. Paul and Essex incorrectly state that they "did not allege" in their First Motion to Dismiss that the Plaintiffs "owed a duty of coverage to Captain Johnson."  Motion at p. 5 ¶ 18. In fact, they did make such an allegation.  In the memorandum of law submitted in support of their motion, St. Paul and Essex stated:

> Through the assignment, these entities were granted the right to any claims Captain Johnson has against . . . the Plaintiffs including . . . benefits due under primary and excess policies (not merely this Bumbershoot Policy) . . . .

\* \* \*

---

[4] The First Declaratory Judgment Action remains pending in the Southern District of New York, albeit in abeyance.

> As this case proceeds, this Court will be compelled to make a determination as to . . . the extent to which Captain Johnson . . . [is] covered under the Bumbershoot Policy.

\* \* \*

> Winterville and Captain Johnson, beneficiaries under the Bumbershoot Policy . . . .

Defendants' Memorandum in Support of Motion to Dismiss for Nonjoinder of Indispensable Parties and Pursuant to the Doctrine of *Forum non Conveniens* at pp. 7, 11 & 16.

These are not the only instances in which St. Paul and Essex have asserted that Captain Johnson is entitled to coverage under the Bumbershoot Policy. In a declaration submitted in support of the motion to set aside Captain Johnson's default in the First Declaratory Judgment Action, St. Paul and Essex's counsel stated:

> b.      Ultimately, Johnson (and by assignment President) is entitled to the insurance proceeds available under the Policy. There is no dispute that the Policy covers American Milling. By express provision, the Policy covers employees of American Milling and would therefore cover Johnson individually, independent of Winterville. . . .

\* \* \*

> 32.      . . . The Insurers seek to avoid their obligation to provide $10,000,000 in insurance proceeds that they have long known they would have to pay out on behalf of their insureds, including Winterville and Johnson.

Exhibit "2" at p. 5 ¶ 29(b) & p. 6 ¶ 32.[5]  St. Paul and Essex made similar assertions in a reply memorandum submitted in support of their motion to set aside the entry of default.  *See* Exhibit "3" at pp. 7-9.

At the oral argument on the motion to set aside the entry of default, St. Paul and Essex's counsel once again alleged that Captain Johnson is covered by the Bumbershoot Policy.  *See* Exhibit "4" at p. 17.  Counsel also stated that, having received the Assignment from Captain Johnson, St. Paul and Essex "are [the] beneficiary of whatever rights Captain Johnson has, we are seeking to assert those rights."  *Id*. at p. 17.  Similarly, St. Paul and Essex's counsel alleged at the oral argument on the motion to transfer that Captain Johnson is covered by the Bumbershoot Policy.  *See* Exhibit "5" at pp. 27 & 28.

Importantly, though, it is not just St. Paul and Essex who are claiming that Captain Johnson is covered under the Bumbershoot Policy.  Captain Johnson, himself, has made this claim as well.  In a declaration prepared by St. Paul and Essex's counsel, Captain Johnson stated:

> 56.    On June 22, 2005, I assigned to President all of my interests in the Policy and proceeds of the Policy at issue in this case so that President could step in and fight for the insurance coverage that I believe to exist. . . .
>
> * * *
>
> 60.    I understand that President simply wants to preserve the insurance monies so that there is something to collect in the Limitation Action, but I believe that there was insurance that covered me and that the insurers are playing games to try to get around paying that which they contracted to pay.

---

[5] In support of the motion to set aside the entry of default, St. Paul and Essex's counsel also stated in his declaration that he had "learned that Johnson is not currently represented by counsel in . . . the Limitation Action in the Eastern District of Missouri."  Exhibit "2" at p. 2 ¶ 9.  Now, on the instant motion, St. Paul and Essex mistakenly assert that the Plaintiffs are still providing a defense to Captain Johnson in the limitation proceeding.  *See* Motion at p. 6 ¶¶ 23-24.  This is just further evidence that St. Paul and Essex will make whatever assertions suit the argument they are making at the time.  Just to be clear, the Plaintiffs ended funding a defense for Captain Johnson in the limitation proceeding soon after the trial on liability in 2000.

6

Exhibit "6" at p. 9 ¶¶ 56 & 60.

In sum, St. Paul and Essex's assertion that they "have not had any reason to assert that Captain Johnson is entitled to insurance proceeds available under the Bumbershoot policy to date" (Motion at p. 6 ¶ 25) is simply astonishing in light of these prior statements.

Of course, the Plaintiffs deny that Captain Johnson is an insured under the Bumbershoot Policy or that he is otherwise entitled to coverage thereunder. In May 1998, the Plaintiffs declined to provide coverage to Winterville and Captain Johnson under the Bumbershoot Policy for the ANNE HOLLY allision. *See* Exhibit "7." In March 2000, Plaintiffs repeated their advices that the Bumbershoot Policy does not provide coverage to Captain Johnson. *See* Exhibit "8."

## ARGUMENT

### POINT I

### THIS ACTION PRESENTS AN ACTUAL CONTROVERSY

The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy." 28 U.S.C. § 2201. It is " 'designed to expedite and simplify the ascertainment of uncertain rights; and it should be liberally construed to attain that objective.' " *Reliance Life Ins. Co. v. Burgess*, 112 F.2d 234, 238 (8th Cir. 1940) (citation omitted). "Declaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 854 F. Supp. 782, 789 (D. Kan. 1994).

In determining whether there is an actual controversy, "the test is whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.' " *Caldwell v. Gurley Refining Co.*,

7

755 F.2d 645, 649 (8th Cir. 1985) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)); *see also Diagnostic Unit Inmate Council v. v. Motion Picture Ass'n of America, Inc.*, 88 F.3d 651, 653 (8th Cir. 1996). "The controversy must be definite and concrete touching the legal relations of parties having adverse legal interests. The questions presenting a controversy must not be abstract but must define issues which are concrete and specific." *Caldwell*, 755 F.2d at 549-50 (citation omitted). "The difference between an abstract question and a 'case or controversy' is necessarily one of degree and must be determined by a review of the facts presented in each case." *United Food and Commercial Workers Intern. Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 426 (8th Cir. 1988); *see also Marine Equipment Management Co. v. U.S.*, 4 F.3d 643, 646 (8th Cir. 1993).

St. Paul and Essex's motion essentially asserts that "[t]he determination of whether Plaintiffs have a duty to indemnify Captain Johnson is not ripe until the Limitation Action is concluded."[6] Defendants' Memorandum in Support of Their Motion to Dismiss First Amended Declaratory Judgment Complaint ("Memo in Supp.") at p. 5. This assertion, however, mischaracterizes the issue. Whether the Plaintiffs are obligated to indemnify Captain Johnson is not the issue. The issue is whether Captain Johnson is entitled to coverage − whether it be a defense or indemnity − under the Bumbershoot Policy in the first place. If it is determined that Captain Johnson is not covered by the Bumbershoot Policy, then that would settle the parties' dispute because the duty to indemnify would not arise. In sum, the dispositive issue in this case is whether Captain Johnson is entitled to coverage under the Bumbershoot Policy. This is a

---

[6] St. Paul and Essex misleadingly state that the Court has "ruled" in the underlying limitation action that "any insurance coverage questions [are] not ripe for adjudication 'in the limitation action' until judgment [is] rendered." Motion at p. 3 ¶ 9. The Court has never made such a ruling. While the Court denied discovery to President Casino in the limitation action on the question of insurance coverage, it did not pass upon the ripeness of the issue. *See In re American Milling Co.*, No. 4:98CV 575-SNL, Docket Nos. 875, 880 & 1489.

question that can be answered without reference to the limitation proceeding and, certainly, before a final judgment is rendered in that proceeding.[7]

In any event, the issue is ripe for adjudication despite the pendency of the limitation action. A judgment against a purported insured is not necessary for an actual controversy to exist regarding an insurance company's obligations to the purported insured. *See*, *e.g.*, *Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992); *St. Paul Guardian Ins. Co. v. Shannon & Wilson, Inc.*, No. 1:06CV5, 2006 WL 1479521, at *3 (E.D. Mo. May 25, 2006). Indeed, an actual controversy can arise even in the absence of a claim by one purporting to fall within the coverage of an insurance policy. *See*, *e.g.*, *National Union*, 854 F. Supp. at 788-89; *Manhattan Fire & Marine Ins. Co. v. Nassau Estates II*, 217 F. Supp. 196, 198 (D.N.J. 1963).

In *Aetna*, the Eighth Circuit found that an actual controversy existed with respect to potential claims against an insured for which no suits had been filed where the insured "had made a clear demand for payment of defense and indemnity costs with respect" to the unasserted claims and the insurance company disputed those demands. 968 F.2d at 711. The Eighth Circuit held similarly in *Capitol Indem. Corp. v. Miles*, 978 F.2d 437 (8th Cir. 1992). In that case, the

---

[7] St. Paul and Essex assert that one of the reasons that the question of insurance coverage is not ripe is because the claimants' entitlement to damages in excess of the $2.2 million limitation fund has not yet been determined. *See* Memo in Supp. at p. 7 n. 5. This assertion is, however, irrelevant because a judgment on damages is not necessary for an actual controversy to exist regarding an insurance company's obligations to the purported insured. *See*, *e.g.*, *Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992); *St. Paul Guardian Ins. Co. v. Shannon & Wilson, Inc.*, No. 1:06CV5, 2006 WL 1479521, at *3 (E.D. Mo. May 25, 2006). Furthermore, the assertion that the claims may not exceed the limitation fund is disingenuous because in a recent Fed. R. Civ. P. 26(a)(2) expert disclosure in the limitation proceeding, President Casino and its insurers claim that their damages alone are nearly $12 million. *See* Exhibit "9." Indeed, St. Paul and Essex, who are currently in the best position to know, continue to acknowledge that they are seeking damages in excess of the limitation fund. *See* Memo in Supp. at p. 7 n. 5.

9

insured had argued that the declaratory judgment action did not present an actual controversy because the underlying suit had not been resolved. *See Capitol Indem.*, 978 F.2d at 438. Finding that an actual controversy did exist, the court of appeals stated:

> Miles [the insured] has made a demand on appellant [the insurer] and appellant has contended that there are no circumstances under which it can owe Miles any money. The lines are drawn, the parties are at odds, the dispute is real. Appellant is in no different position, in any relevant respect, from that occupied by insurers who deny that coverage exists under their policy for liabilities of their insureds that are contingent or unadjudicated. In those kinds of situations, it is most common for the insurer to bring an action for a declaratory judgment that it will have no duty to indemnify.

*Id*. Such is the case here.

Captain Johnson has made a definitive claim for coverage under the Bumbershoot Policy. *See* Exhibit "6" at p. 9 ¶¶ 56 & 60. Furthermore, St. Paul and Essex have repeated over and over that they have "stepped into the shoes" of Captain Johnson by virtue of the Assignment. Accordingly, St. Paul and Essex's assertions that Captain Johnson is covered by the Bumbershoot Policy have the same effect as if Captain Johnson, himself, were making a claim under the policy. As the Plaintiffs dispute these claims, an actual controversy exists.

The caselaw cited by St. Paul and Essex is distinguishable. In *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992), unlike the case at bar, there was no finding of liability on the part of the insured. Moreover, federal standards, not state law, govern a federal court's determination of the propriety of declaratory relief under the Declaratory Judgment Act. *See, e.g., White v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990). St. Paul and Essex's citation to *Aetna Casualty and Surety Co. v. General Dynamics Corp.*, No. 88-2220C, 1989 WL 380494 (E.D. Mo. Dec. 12, 1989), is equally unavailing because they fail to cite to the subsequent Eighth Circuit decision in *Aetna*, wherein the court of appeals

held that an actual case and controversy existed despite the fact that no lawsuit had been filed with regard to certain of the sites. *See* 968 F.2d at 711.

St. Paul and Essex assert that there "is considerable authority in the federal courts that indemnity coverage obligations should await determination until the resolution of the underlying suit." Memo in Supp. at p. 4. Unlike the case at bar where the insurer is seeking a declaratory judgment that it does not have an obligation to indemnify its alleged insured with respect to a liability that has already been determined, the cases cited by St. Paul and Essex deal with insurers seeking declarations that they do not have a duty to defend or indemnify their insureds in matters where there has been no finding of liability. In other words, the duty to indemnify is ripe for adjudication where, like here, the purported insured has been held liable in the underlying suit.

### A.  The Plaintiffs Would Be Prejudiced If This Action Were Dismissed

In the end, St. Paul and Essex's motion is nothing more than an obvious attempt to delay the determination of whether Captain Johnson has any rights under the Bumbershoot Policy so that they and the other claimants can later file suit against the Plaintiffs in a jurisdiction of their choosing, seeking a jury trial in a case where they would not otherwise be entitled to one.[8]  St. Paul and Essex admit as much. *See* Motion at p. 6 ¶ 25. Such tactics cannot be countenanced.

To proceed as St. Paul and Essex suggest would not only be a waste of judicial resources, it would leave open the possibility of multiple, inconsistent judgments. The waste of judicial resources would result from the multitude of lawsuits that would be brought against the Plaintiffs by St. Paul, Essex, President Casino's other insurers, the barge claimants and the numerous

---

[8] "It is well-settled that federal admiralty jurisdiction over maritime contracts extends to suits involving marine insurance policies." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Inter. Ltd.*, 968 F.2d 196, 199 (2d Cir. 1992) (citations omitted).

personal injury claimants seeking to share in the proceeds of the Bumbershoot Policy.[9]  The risk of multiple, inconsistent judgments would necessarily arise from the large number of suits sure to be brought against the Plaintiffs in a variety of fora.  *Cf.  National Union*, 854 F. Supp. at 788-89.

Further prejudice to the Plaintiffs would result from the delay they would be forced to endure in waiting until a final judgment has been rendered in the limitation proceeding.  It has been more than nine years since the casualty.  Any further delay in the resolution of Plaintiffs' rights will only result in increasingly faded memories and added difficulty in obtaining relevant documentation from the many non-parties St. Paul and Essex asserted were relevant to this proceeding when they moved to transfer this action.

A judgment in this declaratory judgment action will serve the useful purpose of clarifying and settling the legal relations in issue.  It will also terminate and afford relief from the uncertainty and controversy giving rise to this action.  Therefore, St. Paul and Essex's motion to dismiss should be denied.

## POINT II

### THE MOTION TO DISMISS FOR NON-JOINDER OF INDISPENSABLE PARTIES SHOULD BE DENIED

The Plaintiffs have previously submitted their opposition to the motion to dismiss for failure to join indispensable parties and rely thereon.[10]  Nonetheless, certain items bear noting.

---

[9] The Plaintiffs deny, however, that any of the claimants actually have the right to bring such a direct action.  *See* N.Y. Ins. Law § 3420(i) (prohibiting direct actions by claimants against marine indemnity insurers).  Nonetheless, it is almost certain that many such actions would ensue.

[10] A copy of the Plaintiffs' memorandum of law in opposition to the motion is submitted herewith as Exhibit "10."

First, the Plaintiffs do not seek to "invalidate" the Assignment by Captain Johnson to President Casino and its insurers. Rather, the Plaintiffs seek a declaration regarding the *effect* of that Assignment. It is the Plaintiffs' position that the Assignment does not bind them because of the Bumbershoot Policy's prohibition against assignments and because such an assignment is prohibited by law. The First Cause of Action of the Amended Complaint makes this clear. *See* Amended Complaint ¶ 86 ("By virtue of the foregoing, the purported Assignment does not bind Plaintiffs.").

Second, this action has been pending in this District for almost one year. Yet, not one of the absent claimants has sought to intervene herein. St. Paul and Essex's assertion of an inconvenience to the absent claimants is no longer valid as this action is now pending in the same courthouse and before the same Judge as the underlying limitation proceeding.

Finally, the purported prejudice to the personal injury claimants has been alleviated by the Court's ruling in the limitation proceeding that they can recover from President Casino's liability insurer (Zurich American Insurance Co.). Indeed, several of the personal injury claimants have apparently settled their claims. *See In re American Milling Co.*, No. 4:98CV 575-SNL, Docket Nos. 1809, 1811 & 1813. In any event, Judge Leonard B. Sand of the Southern District of New York correctly observed at the oral argument on this motion that "what we have here is a declaratory judgment action by an insurer, which raises the issue of the validity of the policy or the coverage of the policy. There's nothing that any personal injury claimant can bring to that issue." Exhibit "11" at p. 4.

## **CONCLUSION**

For the foregoing reasons, both of the motions to dismiss should be DENIED.

Dated: New York, New York
November 29, 2007

        Respectfully submitted,

        NICOLETTI HORNIG & SWEENEY
        Attorneys for Plaintiffs

        By:   /s/ John A.V. Nicoletti
             John A.V. Nicoletti, *pro hac vice*
             Wall Street Plaza
             88 Pine Street, Seventh Floor
             New York, New York 10005-1081
             Tel: (212) 220-3830
             Fax: (212) 220-3780

        Of Counsel

        Samuel C. Coluzzi, *pro hac vice*
        Kevin J.B. O'Malley, *pro hac vice*

           - and -

        TONKIN & MONDL, L.C.
        James K. Mondl
        James O. Hacking, III
        701 Market Street, Suite 260
        St. Louis, Missouri 63101
        Tel: (314) 231-2794
        Fax: (314) 231-1481

**CERTIFICATE OF SERVICE**

      I hereby certify that, on November 29, 2007, I caused the foregoing Memorandum of Law in Opposition to Motion to Dismiss First Amended Declaratory Judgment Complaint to be electronically filed on the Court's docket with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel who have appeared in this action.

      By:    /s/ John A.V. Nicoletti
              John A.V. Nicoletti, *pro hac vice*
              NICOLETTI HORNIG & SWEENEY
              Attorneys for Plaintiffs
              Wall Street Plaza
              88 Pine Street, Seventh Floor
              New York, New York 10005-1081
              Tel: (212) 220-3830
              Fax: (212) 220-3780