Jeffrey J. Asperger, pro hac vice
Bary L. Gassman, pro hac vice
Counsel for Essex Insurance Company
and St. Paul Fire and Marine Insurance Co.
ASPERGER ASSOCIATES LLC
150 North Michigan Avenue, Suite 420
Chicago, IL 60601
ph. 312-856-9901

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NAVIGATORS MANAGEMENT CO., INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:06CV1722-SNL ) |
| ST. PAUL FIRE AND MARINE INSURANCE CO., *et al.* | ) ) ) |
| Defendants. | ) ) |

### DEFENDANTS' REPLY IN SUPPORT OF
### THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT

NOW COME Defendants St. Paul Fire and Marine Insurance Co. ("St. Paul") and Essex Insurance Company ("Essex") and for their Reply in support of their motion to dismiss Plaintiffs' First Amended Declaratory Judgment Complaint state:

### The Duty To Indemnify Is Different From The Duty To Defend

As St. Paul and Essex pointed out in their initial memorandum, decisions relating solely to the indemnity by an insurer should be postponed until the underlying litigation has concluded.[1] However, the Plaintiffs fail to acknowledge the distinction between the justiciability

---

[1] See Memorandum at p. 3-5, citing: *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823 (7th Cir. 1992); *Aetna Casualty and Surety Co. v. General Dynamics Corp.*, 1989 WL 380494 (E.D. Mo. Dec. 12, 1989); *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir. 1998); *American F. & C., Co. v. Pennsylvania T. & F.M.C. Ins. Co.*, 280 F.2d 453 (5th Cir. 1960); *Travelers Indemnity Co. v. Standard Accident Ins. Co.*, 329 F.2d 329 (7th Cir. 1964);

of cases seeking declarations on the duty to defend, versus those merely involving the duty to indemnify. In fact, most of the cases Plaintiffs rely on to support their position involve an insurer seeking a declaration that it did not owe a duty to *defend* the insured. *See, Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707 (8th Cir. 1992)(Insurer sought declaration that it owed no duty to defend and indemnify); *see also, St. Paul Guardian Ins. Co. v. Shannon & Wilson, Inc.*, 2006 WL 1479521 (E.D. Mo. 2006)(Insurer sought declaration that it owed no duty to defend); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 854 F.Supp. 782 (D. Kan. 1994)(Declaration sought by insurer not limited to issue of indemnity); *Manhattan Fire & Marine Ins. Co. v. Nassau Estates II*, 217 F. Supp. 196 (D. N.J. 1963)(Insurer sought to avoid the "labor and expense" of defending the underlying action).

Naturally, the duty to defend an insured is ripe for adjudication during the pendency of the underlying lawsuit because the underlying lawsuit implicates that duty. However, the duty to indemnify is not implicated by the shear existence of an underlying claim; rather, it will only be implicated when a monetary judgment is entered against the insured.

In our case, the relief sought by the Plaintiffs is a declaration that they are not liable to St. Paul, Essex or Royal Indemnity Co. ("Royal") under the Bumbershoot Policy for liabilities arising out of the April 4, 1998, allision.[2] Nowhere in their First Amended Declaratory Judgment Complaint do the Plaintiffs seek a declaration that they have no duty to provide a defense for St. Paul, Essex, Royal or Captain Johnson. Such a prayer for relief would be illogical since St. Paul, Essex and Royal are not situated in a position where they would seek a

---

*Nationwide Mutual Ins. Co. v. Fidelity & Cas. Co.*, 286 F.2d 91 (3rd Cir. 1961); *Home Ins. Co. v. Perlberger*, 900 F.Supp. 768 (E.D. Pa. 1995); *Colonia Ins. v. Williams*, 941 F.Supp. 606 (N.D. Miss. 1996); *Guaranty Nat. Ins. Co. v. Beeline Stores, Inc.*, 945 F.Supp. 1510 (M.D. Ala. 1996); *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557 (M.D. Ala. 1996).

[2] See First Amended Declaratory Judgment Complaint, p. 19.

defense under the policy. Additionally, the Plaintiffs have already provided for Captain Johnson's defense in the liability phase of the limitation proceeding.[3] The only question left to be decided with respect to the Bumbershoot Policy is whether it provides indemnification for Captain Johnson's negligence, and that issue is not yet ripe for adjudication—a position President has maintained since this action was first brought by Plaintiffs in New York.[4]

### St. Paul and Essex Have Not Demanded Indemnification

The Plaintiffs seek further support for their position in the 8th Circuit cases of *Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707 (1992) and *Capitol Indemnity Corp. v. Miles*, 978 F.2d 437 (1992).[5] However, these cases are distinguishable from the current action because in *Aetna* and *Capitol*, the defendant insureds made actual demands on the insurers to provide coverage. *See, Aetna*, at 711 (Defendant "made a clear demand for payment of defense and indemnity costs"); *Capitol Indemnity*, at 438 (Defendant "has made a demand" on Plaintiff). In our case, no demands for indemnification have ever been made by St. Paul, Essex or Royal.

The Plaintiffs make numerous citations throughout their brief to instances where St. Paul and Essex expressed their position that the Bumbershoot Policy covers Captain Johnson. This is the position of St. Paul and Essex which they have consistently expressed so as not to concede the Plaintiffs' contrary assertion. However, this does not equate to a demand for indemnity. Indeed, St. Paul and Essex have no reason to demand indemnification for Captain Johnson unless and until a judgment exceeding the limitation fund is obtained in the underlying action.

---

[3] It bears noting that counsel for Captain Johnson has never filed a motion (or received an order) to withdraw from the representation of Johnson.

[4] See Exhibit 1 to Memorandum of Law in Opposition to Motion to Dismiss First Amended Complaint, para. 87.

[5] See Memorandum of Law in Opposition to Motion to Dismiss First Amended Complaint, p. 9.

Further, contrary to the Plaintiffs' assertions, it is not clear that Captain Johnson himself has ever made a demand for indemnity. Plaintiffs' contention seems to be based on the arguments of the undersigned counsel and the affidavit of the Captain. Those documents may well contain arguments that Captain Johnson should be covered, but none constitute "demands" by an insured upon his insurer. Although Plaintiffs' Exhibits 7 and 8 to their Memorandum in Opposition indicate that Plaintiffs merely offered a defense to Johnson to "protect the interests of American Milling," Plaintiffs offer nothing to suggest that Captain Johnson ever actually asked the underwriters for indemnity, through his counsel (who was apparently hired by Plaintiffs) or otherwise.

### The Asserted Controversy Lacks "Immediacy and Reality"

Plaintiffs acknowledge in their brief that when determining if there is an actual controversy, "the test is whether 'there is a substantial controversy, between the parties...of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment.'"[6] In our case, however, the controversy asserted by the Plaintiffs is neither immediate nor real.

As stated above, neither St. Paul, Essex, nor Royal have made a demand upon the Plaintiffs to provide indemnification for Captain Johnson under the Bumbershoot Policy. Until this occurs, there can be no real controversy between the parties.

Additionally, the damage amount in the limitation action is yet to be determined. Therefore, whether St. Paul's and Essex's assigned rights under the Bumbershoot Policy will ever be implicated is likewise yet to be determined. While the claimants in the limitation proceeding certainly believe that their claims exceed the limitation fund, this is being contested

---

[6] See Memorandum of Law in Opposition to Motion to Dismiss First Amended Complaint, p. 7 (citing *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985)(quoting *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)))(emphasis added).

by the Plaintiffs, as the insurers of American Milling. Thus, a final determination of damages has not been made. If the Court were to find that the value of the claims do not exceed the limitation fund, the Plaintiffs' declaratory judgment action will be moot. In such a case, litigating the declaratory judgment action prematurely would prove to be a waste of financial and judicial resources. That is a scenario which should be avoided through the dismissal of this declaratory judgment case.

**The Motion To Dismiss For Non-Joinder Of Indispensable Parties Should Be Granted**

In Plaintiffs' opposition they state that they "do not seek to 'invalidate' the Assignment by Captain Johnson to President Casino and its insurers," and through a game of semantics they attempt to draw a distinction between an assignment which is not valid and one which has no binding effect.[7] The Plaintiffs' argument is tenuous at best. Indeed, in order for a court to determine that the Assignment is not binding, the court would necessarily have to find that the Assignment was not valid. Otherwise, a valid Assignment would certainly allow St. Paul and Essex to step into the shoes of Captain Johnson, take any rights he has under the Bumbershoot Policy, and establish the standing necessary to pursue those rights. The only reasonable interpretation of the Plaintiffs' prayer for relief is that the Plaintiffs do in fact seek to invalidate the Assignment, at least to the extent that it conveys Captain Johnson's rights under the Bumbershoot Policy. Thus, Captain Johnson is an indispensable party who the Plaintiffs have failed to join.

Additionally, Plaintiffs have failed to join HIH and President, both of whom are assignees to Johnson's rights, as further explained in the briefs previously filed prior to the action being transferred.

---

[7] See Memorandum of Law in Opposition to Motion to Dismiss Complaint, p. 13.

### The Plaintiffs' Claims Of Prejudice Are Disingenuous

The Plaintiffs claim that a dismissal of this case would result in prejudice because "it would leave open the possibility of multiple, inconsistent judgments."[8] However, as stated above, the Plaintiffs have failed to join in this case the very parties that they fear will bring those lawsuits. If the Plaintiffs were truly concerned of "multiple, inconsistent judgments" they would have included these parties in the current action. Additionally, if damages awarded in the limitation proceeding are less than the value of the limitation fund, no further lawsuits would be instituted and the Plaintiffs' declaratory judgment case would be moot. This Honorable Court should not be compelled to issue an advisory opinion at this time based on a possibility that Captain Johnson's rights under the Bumbershoot Policy may be implicated in the future.

Additionally, Plaintiffs claim that they would be prejudiced if they are forced to wait until a final judgment has been rendered in the limitation proceeding. This claim has no merit since the Plaintiffs are directly involved in the limitation proceeding to the extent that they are providing the defense for American Milling.

The Plaintiffs' final claim of prejudice is that "any further delay…will only result in increasingly faded memories and added difficulty in obtaining relevant documentation from…non-parties…."[9] This assertion is inconsistent with the Plaintiffs' prior position. As St. Paul and Essex pointed out in their Memorandum supporting this motion, they attempted to conduct discovery concerning insurance proceeds several years ago. The Plaintiffs, who defended American Milling at that time, opposed these requests for discovery arguing that they were premature. Clearly the Plaintiffs had no concerns about "faded memories" at that time,

---

[8] See Memorandum of Law in Opposition to Motion to Dismiss Complaint, p. 11.

[9] See Memorandum of Law in Opposition to Motion to Dismiss Complaint, p. 12.

when recollections would have been more clear than today. Moreover, the Plaintiffs have barely attempted to pursue discovery from non-parties in this case despite it being on file for two years. The Plaintiffs' claims of prejudice are wholly disingenuous.

### Conclusion

For the aforesaid reasons, this Honorable Court should grant St. Paul's and Essex's motion to dismiss Plaintiffs' First Amended Declaratory Judgment Complaint. Without the certainty of a final judgment in the limitation action (imposing damages in a sum certain against Captain Johnson), such relief in favor of St. Paul and Essex is required for the Court to avoid issuing a mere advisory opinion as to whether Plaintiffs owe a duty of indemnity to Captain Johnson in the limitation action.

Respectfully submitted,

ASPERGER ASSOCIATES LLC


By:   /s/Jeffrey J. Asperger
Jeffrey J. Asperger, pro hac vice
Bary L. Gassman, pro hac vice
Counsel for Defendants
ASPERGER ASSOCIATES LLC
150 North Michigan Avenue
Suite 420
Chicago, IL 60601
ph. 312-856-9901

## CERTIFICATE OF SERVICE

I, hereby certify that on December 4, 2007, I caused the foregoing **Defendants' Reply In Support of their Motion to Dismiss First Amended Complaint** to be electronically filed on the Court's docket with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel who have appeared in this action.

ASPERGER ASSOCIATES LLC

By: /s/Jeffrey J. Asperger
Jeffrey J. Asperger, pro hac vice
Bary L. Gassman, pro hac vice
Counsel for Defendants
ASPERGER ASSOCIATES LLC
150 North Michigan Avenue
Suite 420
Chicago, IL 60601
ph. 312-856-9901