UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NAVIGATORS MANAGEMENT COMPANY INC. et al., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:06CV1722 SNLJ ) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to compel (#55), filed November 20, 2007. Several memoranda in opposition were filed; plaintiffs' filed a memorandum in opposition on January 3, 2008 (#66); American Milling Company ("American Milling") filed a memorandum in opposition on January 3, 2008; and Gene Tutoky and The Charles L. Crane Agency (together "Crane Agency") filed a memorandum in opposition on January 4, 2008 (#68). Defendants' motion seeks the production of several documents from the Crane Agency, or, in the alternative, seek an *in camera* review of the challenged documents. The parties in opposition claim attorney-client and work-product privileges.

**I. Statement of the Case**

This case involves an insurance coverage dispute that arose after a collision and resulting secondary allisions caused by the towboat M/V ANNE HOLLY striking the Eads Bridge at St. Louis, Missouri on April 4, 1998. At the time of the collision/allisions American Milling Co., UN Ltd., H&B Marine, Inc., and American Milling, LP (collectively "American Milling") owned the M/V ANNE HOLLY. The crew, including the ship's captain, Captain John Johnson, were

employees of Winterville Marine, which is now in bankruptcy. The plaintiffs in the present action, Navigators Management Company, Inc. and American Home Assurance Company, are underwriters of a bumbershoot policy held by American Milling that provides coverage to American Milling for liability in excess of its primary insurance coverage.

Immediately following the collision/allisions, various exoneration and/or limitation of liability cases and negligence actions were filed, many of which involved injury to the President Riverboat Casino and its patrons. These cases were then consolidated before this Court in the Eastern District of Missouri. *See* In re American Milling Co., 270 F.Supp.2d 1068 (E.D. Mo. 2003), *aff'd in part, rev'd in part*, 409 F.3d 1005 (8th Cir. 2005). In those proceedings, this Court found that American Milling, Winterville and Captain Johnson were negligent parties. Id. Further, on appeal, the United States Court of Appeals for the Eighth Circuit determined that Winterville and Captain Johnson were not entitled to protections under the Limitation of Liability Act. *See* In re American Milling Co., 409 F.3d 1005 (8th Cir. 2005). On July 31, 2008, this Court entered its final judgment in the American Milling case apportioning damages from the Limitation Fund to the remaining three claimants. In addition, this Court awarded damages against Captain Johnson of nearly $8,000,000 that are not subject to the limitation fund. Nearly $7,000,000 of the total was awarded to President Casino and the remainder to claimants Brennan Marine Co. and Pinnacle Barge Co. All other claimants in the consolidated actions have settled out of court.

While the case in the Eastern District of Missouri was proceeding, plaintiffs filed a Complaint for Declaratory Judgment in the Southern District of New York in December 2004, against Winterville Marine and Captain Johnson. Plaintiffs sought a declaration that neither Winterville nor Captain Johnson were entitled to coverage under the bumbershoot policy. When

President Casino and its insurers (HIH Casualty and General Insurance Ltd. ("HIH"), an Australian corporation; St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota corporation; Essex Insurance Company ("Essex"), a Delaware corporation; and Royal Indemnity Company ("Royal Indemnity"), also a Delaware corporation) became aware of the action, they filed a motion to intervene on June 17, 2005.

Then on June 23, 2005, Captain Johnson executed an assignment to President Casino and President's insurers conveying whatever rights he had against American Milling and its insurers, including those under the bumbershoot policy herein, in return for a limited covenant not to execute against him. In particular, President Casino and President's insurers agreed not to execute against Captain Johnson or his personal assets on any judgment obtained against Captain Johnson in the underlying negligence action. Due to the assignment, on October 4, 2005, the United States District Court for the Southern District of New York allowed President Casino and President's insurers to be substituted for Captain Johnson under Federal Rule of Civil Procedure 25. The case has since been transferred to this Court which now turns to the current discovery dispute.

Gene Tutoky is an insurance broker for the Crane Agency which arranged for American Milling's insurance package. On August 8, 2007, the defendants served subpoenas for documents on the Crane Agency. On August 29, 2007, James Mondl of Tonkin & Mondl, local counsel for the plaintiffs, sent a letter and privilege log to the Crane Agency, objecting to the production of certain documents based on the assertion of privilege under the attorney-client and work-product doctrines. On August 30, 2007, John Halpern of Goldstein & Price, the attorneys for American Milling, sent a letter and similar privilege log to the Crane Agency, also objecting to the production of certain documents based on the assertion of privilege under the attorney-client and

3

work-product doctrines. In response to the August 8, 2007, subpoena, the Crane Agency refused to produce those documents listed in Mr. Mondl's and Mr. Halpern's privilege logs, based on their respective claims of privilege on behalf of their clients. Defendants then had several communications with the Crane Agency, Mr. Mondl, and Mr. Halpern challenging the sufficiency of the privilege logs. Parties failed to reach a resolution and defendants filed this motion to compel.

**II. Motion to Compel**

The defendants seek the production of several documents from the Crane Agency claiming that they relate to the issue of whether Captain Johnson was covered under American Milling's bumbershoot policy purchased from plaintiffs. Plaintiffs, American Milling, and the Crane Agency claim that: (1) the documents are protected by attorney-client privilege and (2) the documents are protected by the work-product doctrine. Plaintiffs and the Crane Agency additionally claim that (3) defendants seek irrelevant documents. Defendants assert that these privileges do not apply, but, assuming *arguendo* that they did apply, the documents should still be produced under Federal Rule of Civil Procedure 26(b)(3).

**A. Attorney-Client Privilege**

The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients . . ." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). In re Bieter Co., 16 F.3d 929 (8th Cir. 1994), established that the scope of the attorney client privilege under federal common law is articulated in proposed Federal Rule of Evidence 503 also known as Supreme Court Standard 503 which states that:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's

4

representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

The privilege is not absolute, however, and does not extend to all communications between an attorney and a client. The privilege protects "only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).

**1. Was the Crane Agency was a Representative of American Milling?**

The Crane Agency is the brokerage firm used by American Milling to purchase insurance from plaintiffs. Both American Milling and plaintiffs seek to assert a claim of attorney-client privilege to the documents. American Milling claims that the Crane Agency was its representative, and thus any statements made to American Milling attorneys were privileged. The plaintiffs then attempt to extend this doctrine to communications made with plaintiffs under the common interest doctrine discussed below.

Supreme Court Standard 503 does not define who is a "representative of the client." Instead, the issue is to be determined on a "case-by-case basis." In re Bieter, 16 F.3d at 935. In addressing the issue the Eighth Circuit rejected a rigid approach in determining who qualifies as a representative of the client, instead recognizing that even persons that are "independent contractors" may be a representative of the client. Id. at 937. Defendants, however, note that the independent contractor in In re Bieter acted as sole representative of Bieter at meetings and made decisions on behalf of the company and argues the Crane Agency's involvement is far less in this case.

The only information the Court has before it regarding the duties performed by the Crane Agency is found in the affidavits of Mike Heiy, Controller for American Milling, and John R.

Halpern, attorney for American Milling. The affidavit of Halpern states that marine insurance brokers, such as the Crane Agency, are acting "as a conduit for information passed to the insurers of the client, obtaining and furnishing information to attorneys appointed to defend their client, participating in decisions regarding the defense of their client, monetary reserves for the claim, and settlement of the claim." Plaintiffs cite to several cases in which similar maritime brokers have been found to be "representatives" of their insurers. *See* Atmel Corp. v. St. Paul Fire & Marine Ins., 409 F.Supp.2d 1181 (N.D. Cal. 2005) (finding privilege where broker "served as a conduit of information" and "worked [with insured] to provide relevant information about litigation or claims to the insurers."); *see also* Royal Surplus Lines Ins. v. Sofamor Danek, 190 F.R.D. 463 (W.D. Tenn. 1999) (privilege was extended where broker was "the main conduit of information between [insured and insurer] during negotiations for the policy.")

This Court finds that the Crane Agency was acting as American Milling's "representative" to the extent that its communications were made for the purpose of "facilitating the rendition of professional legal services to the client." As such, communications between the Crane Agency and American Milling are protected by attorney-client privilege. However, the Crane Agency cannot be said to be American Milling's "representative" to the extent that its communications did not involve an attorney or were not done to facilitate legal services. As such, those communications are discoverable.

**2. Common Interest Doctrine**

Despite the protections of attorney-client privilege between American Milling and the Crane Agency, attorney-client privilege is generally waived when the communication is disclosed to third-parties, such as plaintiffs in this case. An exception exists if the parties invoking the privilege establish that they shared a common interest or joint defense with the third-party, in

which case the privilege is extended to all. American Milling, the Crane Agency, and plaintiffs all shared a common interest among themselves and with Captain Johnson, whose rights defendants now hold because of the assignment during the limitation of liability proceeding. Although this Court agrees that there existed a common interest between these parties in the limitation of liability proceeding, there is not the same common interest in this declaratory action regarding the insurance coverage issues. This Court must then determine the extent to which this doctrine is applicable.

Although a common legal interest is required for application of this doctrine, the defenses of the participants do not have to be in all respects compatible for the privilege to apply. *See* U.S. v. McPartlin, 595 F.2d 1321, 1336 (7th Cir. 1979). One such case concerned the exchange of information among counsel and targets of an SEC investigation, including counsel for a corporation and counsel for certain individuals. Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974, 406 F.Supp. 381 (S.D.N.Y. 1975). The government claimed that the interests of certain participants were divergent because the corporation charged might have a claim against individual participants for their SEC violations. The court nonetheless found the privilege applicable, stating that even if an action by the company against its former officers was foreseeable, "[t]hat alone would not have prevented [the] sharing [of] confidential information for the purpose of a joint defense against the immediate SEC action . . . That a joint defense may be made by somewhat unsteady bedfellows does not in itself negate the existence or viability of the joint defense." Id. at 392.

It is true that plaintiffs, American Milling, Winterville, and Captain Johnson were engaged in a joint effort in defending the claims asserted against them in the limitation of liability proceeding. Under the common interest doctrine, attorney-client privilege was extended to

7

communications made between the codefendants and codefendant attorneys. The foreseeable litigation between these parties regarding insurance coverage did not destroy the extension. This extension, however, relates only to the communications made for the purposes of litigation regarding limitation of liability. "When an attorney acts for two different clients who each have a common interest, communications of either party to the attorney are not necessarily privileged in subsequent litigation between the two clients." Bituminous Casualty Corporation v. Tonka Corporation, 140 F.R.D. 381 (Minn. 1992) *citing* McCormick, Evidence § 91. Except for the purpose of deciding whether to provide representation, insurance coverage was not a common interest necessary for the limitation of liability proceeding. Even then, it was repeatedly stated that plaintiffs were not making a decision regarding coverage. Therefore, any communications between the Crane Agency and American Milling that were shared with plaintiffs and that were not necessary for the limitation of liability proceeding waived the attorney-client privilege held by American Milling and the Crane Agency. Accordingly, the common interest doctrine does not apply and those documents are discoverable.

For the same reasons, plaintiffs are also unable to invoke the common interest doctrine to claim privilege over communications directly with the Crane Agency that were outside the scope of the limitation of liability proceeding. Insurance coverage was not a common interest between plaintiffs and the Crane Agency and all communications between the parties on that issue are discoverable.

**B. Work-Product Doctrine**

Plaintiffs next claim the documents requested are protected because they would not have been created in the normal course of business by plaintiffs, American Milling, or the Crane Agency had the casualty not occurred. The allision and/or collisions involving the M/V ANNE

HOLLY occurred on April 4, 1998, and the limitation of liability proceeding was commenced by American Milling on April 6, 1998. All documents now sought were created after April 6, 1998. Defendants claim, however, that the limitation of liability litigation does not cover communications regarding insurance coverage because the coverage of Captain Johnson was not at issue in that litigation. Plaintiffs counter that insurance coverage was always an issue and cite to communications between the Plaintiffs and the Crane Agency in May 1998, and again in March 2000.

There is no bright line test for when the actions of an insurer are considered in the ordinary course of business versus in anticipation of litigation. Instead, the privilege should be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997). There is no doubt that the communications sought were created after the limitation proceeding commenced, but it also appears that determining the extent and availability of coverage for an insured is clearly within the ordinary business actions of an insurer. As a baseline, any documents that would have been created by the Crane Agency after any collision or accident regardless of pending litigation, are discoverable.

In addition, the work-product doctrine is not absolute. A party can waive protection for work-product documents by sharing those documents with third parties. However, disclosure of documents protected by the work product doctrine to third-parties does not necessarily waive the work product immunity. Disclosure to third persons only waives the work product immunity if it "substantially increases the opportunities for potential adversaries to obtain the information." E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1544772, *3 (Neb. 2007) *citing* 8 Wright, et al., Federal Practice & Procedure, Civ2d § 2024 (1994). This Court must determine

9

whether sharing information with the plaintiffs increased the likelihood that the documents would be given to an adversary. The difficulty in this case is determining who is an "adversary."

American Milling was responsible for obtaining insurance for its vessels and the parties that worked the vessels, and American Milling obtained a bumbershoot policy from plaintiffs for that purpose. But the issue in this action is whether American Milling communicated to plaintiffs that Captain Johnson and Winterville were to be covered by that policy. Plaintiffs are claiming that they did not receive proper documentation for Winterville and Captain Johnson for coverage to be extended. Although plaintiffs' denial of coverage places American Milling and plaintiffs on opposing sides of this litigation, American Milling and plaintiffs are now claiming common interests in trying to insulate all documents passed between insurer and insured from being discovered by the parties that relied on American Milling to obtain insurance coverage. This Court finds that, despite the parties characterization to the contrary, for the purpose of this litigation on the limited issue of insurance coverage, American Milling and plaintiffs did not share common interests. Therefore, the sharing of documents between the two parities destroyed any work-product privilege, and those documents relating to insurance coverage are discoverable, subject, of course to the attorney-client privilege claims addressed above.

**C. Sufficiency of Privilege Logs**

Defendants next argue that the privilege logs provided by the Crane Agency are insufficient. This Court agrees with defendants that the privilege logs do not satisfy the requirements of F.R.Civ.P. 45(d)(2)(A), which states:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) expressly make the claim; and
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

The privilege logs provided to defendants give generic, often one word, statements of the subject matter and offer the same clams of work-product and attorney-client privilege for every document. Most entries are unclear, at best, and some are nothing more than a blanket claim of privilege by the parties.

The privilege logs do not provide sufficient information to allow defendants or this Court to properly assess the claims of privilege of the individual documents. Therefore, in addition to the production of documents in accordance with the discussion above, this Court orders that the Crane Agency provide a privilege log that complies with Federal Rule of Civil Procedure 45(d)(2)(A) for all remaining withheld documents so that defendants may be able to accurately and specifically bring any further challenges.

### D. Federal Rule of Civil Procedure 26(b)(3)

This Court presently does not have enough information before it to judge the merit of defendants argument based on "substantial need" under Federal Rule of Civil Procedure 26(b)(3). If there are documents withheld by the Crane Agency after this order that the defendants feel should be turned over pursuant to this rule, the defendants must present arguments for the rules application to specific documents or document categories.

## III. Conclusion

This Court is unable to fully analyze the Crane Agency's claims of privilege for specific documents due to the insufficiency of the privilege logs provided. However, the Crane Agency must turn over any and all communications that are not protected by any privilege, as addressed in this order.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel (#55) is hereby **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Crane Agency shall turn over any communications not privileged to the defendants as set out in this memorandum.

**IT IS FURTHER ORDERED** that, for any communication withheld, the Crane Agency shall provide a privilege log that complies with Federal Rule of Civil Procedure 45(d)(2)(A).

**IT IS FURTHER ORDERED** that upon receiving the amended privilege log defendants may file another motion to compel presenting arguments directed at specific documents or document categories.

Dated this __24th__ day of February, 2009.

_____
UNITED STATES DISTRICT JUDGE