UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NAVIGATORS MANAGEMENT COMPANY INC. et al., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 4:06CV1722 SNLJ<br>) |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to compel (#56), filed November 20, 2007. Plaintiffs filed a memorandum in opposition (#67), on January 3, 2008. Defendants then filed a reply (#74), on January 25, 2008. Defendants seek documents and communications held by plaintiffs in the underwriting files of Navigators and the claims files of both Navigators and American Home.

**I. Statement of the Case**

This case involves an insurance coverage dispute that arose after a collision and resulting secondary allisions caused by the towboat M/V ANNE HOLLY striking the Eads Bridge at St. Louis, Missouri on April 4, 1998. At the time of the collision/allisions American Milling Co., UN Ltd., H&B Marine, Inc., and American Milling, LP (collectively "American Milling") owned the M/V ANNE HOLLY. The crew, including the ship's captain, Captain John Johnson, were employees of Winterville Marine, which is now in bankruptcy. The plaintiffs in the present action, Navigators Management Company, Inc. and American Home Assurance Company, are

underwriters of a bumbershoot policy held by American Milling that provides coverage to American Milling for liability in excess of its primary insurance coverage.

Immediately following the collision/allisions, various exoneration and/or limitation of liability cases and negligence actions were filed, many of which involved injury to the President Riverboat Casino and its patrons. These cases were then consolidated before this Court in the Eastern District of Missouri. *See* In re American Milling Co., 270 F.Supp.2d 1068 (E.D. Mo. 2003), *aff'd in part, rev'd in part*, 409 F.3d 1005 (8th Cir. 2005). In those proceedings, this Court found that American Milling, Winterville and Captain Johnson were negligent parties. Id. Further, on appeal, the United States Court of Appeals for the Eighth Circuit determined that Winterville and Captain Johnson were not entitled to protections under the Limitation of Liability Act. *See* In re American Milling Co., 409 F.3d 1005 (8th Cir. 2005). On July 31, 2008, this Court entered its final judgment in the American Milling case apportioning damages from the Limitation Fund to the remaining three claimants. In addition, this Court awarded damages against Captain Johnson of nearly $8,000,000 that are not subject to the limitation fund. Nearly $7,000,000 of the total was awarded to President Casino and the remainder to claimants Brennan Marine Co. and Pinnacle Barge Co. All other claimants in the consolidated actions have settled out of court.

While the case in the Eastern District of Missouri was proceeding, plaintiffs filed a Complaint for Declaratory Judgment in the Southern District of New York in December 2004, against Winterville Marine and Captain Johnson. Plaintiffs sought a declaration that neither Winterville nor Captain Johnson were entitled to coverage under the bumbershoot policy. When President Casino and its insurers (HIH Casualty and General Insurance Ltd. ("HIH"), an Australian corporation; St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota

corporation; Essex Insurance Company ("Essex"), a Delaware corporation; and Royal Indemnity Company ("Royal Indemnity"), also a Delaware corporation) became aware of the action, they filed a motion to intervene on June 17, 2005.

Then on June 23, 2005, Captain Johnson executed an assignment to President Casino and President's insurers conveying whatever rights he had against American Milling and its insurers, including those under the bumbershoot policy herein, in return for a limited covenant not to execute against him. In particular, President Casino and President's insurers agreed not to execute against Captain Johnson or his personal assets on any judgment obtained against Captain Johnson in the underlying negligence action. Due to the assignment, on October 4, 2005, the United States District Court for the Southern District of New York allowed President Casino and President's insurers to be substituted for Captain Johnson under Federal Rule of Civil Procedure 25. The case has since been transferred to this Court which now turns to the current discovery dispute.

## II. Motion to Compel

On August 3, 2007, defendants served plaintiffs with an initial request for the production of documents. Defendants requested the production of documents from the underwriting file of Navigators and the claims files of both Navigators and American Home. On September 19, 2007, plaintiffs served their responses and objections to defendants' production requests. Plaintiffs objected to the production of several hundred documents based on attorney-client privilege, the common interest doctrine, and work-product doctrine. Plaintiffs provided with their response a corresponding privilege log. Based on this information, defendants are challenging the privileges and doctrines asserted for hundreds of the documents withheld. Defendants seek to have this

court compel production of the documents or, in the alternative, provide an *in camera* review of these documents.

### A. Attorney-Client Privilege

Plaintiffs claim privilege over all document listed in the privilege log based on attorney-client privilege despite the fact that several of the documents do not appear to even have an attorney a party. This Court is at great disadvantage in determining the merits of this claim, because, although plaintiffs dutifully provided a privilege log listing the parties to the documents withheld, many of the parties listed are identified only by name and there is no indication what relationship they have to the plaintiffs, defendants, or American Milling. This Court cannot judge the application of the attorney-client privilege if the Court is not familiar with the parties to a communication. However, this Court will address plaintiffs general claims of privilege and allow the parties to disclose appropriate documents accordingly.

### 1. Was the Crane Agency was a Representative of American Milling?

The Charles L. Crane Agency ("Crane Agency") is the brokerage firm used by American Milling to purchase insurance from plaintiffs. Both American Milling and plaintiffs seek to assert a claim of attorney-client privilege to the documents. American Milling claims that the Crane Agency was its representative and thus any statements made to American Milling attorneys were privileged.

Proposed Federal Rule of Evidence 503 also known as Supreme Court Standard 503 does not define who is a "representative of the client." Instead, the issue is to be determined on a "case-by-case basis." In re Bieter, 16 F.3d at 935. In addressing the issue the Eighth Circuit rejected a rigid approach to the issue of who qualifies as a representative of the client and recognized that even persons that are "independent contractors" may be a representative of the

4

client.  Id. at 937.  Defendants, however, note that the independent contractor in In re Bieter acted as sole representative of Bieter at meetings and made decisions on behalf of the company and argues the Crane Agency's involvement is far less in this case.

The only information the Court has before it regarding the duties performed by the Crane Agency is found in the affidavits of Mike Heiy, Controller for American Milling, and John R. Halpern, attorney for American Milling.  The affidavit of Halpern states that marine insurance brokers, such as the Crane Agency, are acting "as a conduit for information passed to the insurers of the client, obtaining and furnishing information to attorneys appointed to defend their client, participating in decisions regarding the defense of their client, monetary reserves for the claim, and settlement of the claim."  Plaintiffs cite to several cases in which similar maritime brokers have been found to be "representatives" of their insurers.  *See* Atmel Corp. v. St. Paul Fire & Marine Ins., 409 F.Supp.2d 1181 (N.D. Cal. 2005) (finding privilege where broker "served as a conduit of information" and "worked [with insured] to provide relevant information about litigation or claims to the insurers."); *see also* Royal Surplus Lines Ins. v. Sofamor Danek, 190 F.R.D. 463 (W.D. Tenn. 1999) (privilege was extended where broker was "the main conduit of information between [insured and insurer] during negotiations for the policy.")

This Court finds that the Crane Agency was acting as American Milling's "representative" to the extent that its communications were made for the purpose of "facilitating the rendition of professional legal services to the client."  As such, communications between the Crane Agency and American Milling are protected by attorney-client privilege.  However, the documents sought are in the possession of the plaintiffs which means that documents that might have been protected by the attorney-client privilege were disclosed to a third-party which generally waives the

privilege. For that reason the Court now turns to plaintiffs' claim of the common interest doctrine.

## 2. Common Interest Doctrine

Plaintiffs seek to argue attorney-client privilege over any communications made by the Crane Agency to either plaintiffs or American Milling by asserting the common interest or joint defense doctrine. Despite the general rule that attorney-client privilege is generally waived when the communication is disclosed to third-parties, such as the plaintiffs in this case, there exists an exception. If the parties invoking the privilege establish that they shared a common interest or joint defense with the third-party, in which case the privilege is extended to all. Plaintiff claim that it shared a common interest with American Milling and Captain Johnson, whose rights defendants now hold because of the assignment during the limitation of liability proceeding. Although this Court agrees that there existed a common interest between these parties in the limitation of liability proceeding, there is not the same common interest in this declaratory action regarding the insurance coverage issues. This Court must then determine the extent to which this doctrine is applicable.

Although a common legal interest is required for application of this doctrine, the defenses of the participants do not have to be in all respects compatible for the privilege to apply. *See* U.S. c. McPartlin, 595 F.2d 1321, 1336 (7th Cir. 1979). One such case concerned the exchange of information among counsel and targets of an SEC investigation, including counsel for a corporation and counsel for certain individuals. Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974, 406 F.Supp. 381 (S.D.N.Y. 1975). The government claimed that the interests of certain participants were divergent because the corporation charged might have a claim against individual participants for their SEC violations. The court nonetheless found the

6

privilege applicable, stating that even if an action by the company against its former officers was foreseeable, "[t]hat alone would not have prevented [the] sharing [of] confidential information for the purpose of a joint defense against the immediate SEC action . . . That a joint defense may be made by somewhat unsteady bedfellows does not in itself negate the existence or viability of the joint defense." Id. at 392.

It is true that plaintiffs, American Milling, Winterville, and Captain Johnson were engaged in a joint effort in defending the claims asserted against them in the limitation of liability proceeding. Under the common interest doctrine, attorney-client privilege was extended to communications made between the codefendants and codefendant attorneys. The foreseeable litigation between these parties regarding insurance coverage did not destroy the extension. This extension, however, relates only to the litigation regarding limitation of liability. "When an attorney acts for two different clients who each have a common interest, communications of either party to the attorney are not necessarily privileged in subsequent litigation between the two clients." Bituminous Casualty Corporation v. Tonka Corporation, 140 F.R.D. 381 (Minn. 1992) *citing* McCormick, Evidence § 91. Except for to decide whether to provide representation, discussions regarding insurance coverage was not a common interest necessary for the limitation of liability proceeding. Even then, it was repeatedly stated that plaintiffs were not making a decision regarding coverage. Therefore, any communications between the Crane Agency and American Milling that were shared with plaintiffs and that were not necessary for the limitation of liability proceeding waived the attorney-client privilege hld by American Milling and the Crane Agency. Accordingly, the common interest doctrine does not apply and those documents are discoverable.

For the same reasons, plaintiffs are also unable to invoke the common interest doctrine to claim privilege over communications directly with the Crane Agency that were outside the scope of the limitation of liability proceeding. Insurance coverage was not a common interest between plaintiffs and the Crane Agency and all communications between the parties on that issue are discoverable.

**B. Work-Product Doctrine**

Plaintiffs next claim the documents requested are protected because they would not have been created in the normal course of business by plaintiffs, American Milling, or the Crane Agency had the casualty not occurred. The allision and/or collisions involving the M/V ANNE HOLLY occurred on April 4, 1998, and the limitation of liability proceeding was commenced by American Milling on April 6, 1998. All documents now sought were created after April 6, 1998. Defendants claim, however, that the limitation of liability litigation does not cover communications regarding insurance coverage because the coverage of Captain Johnson was not at issue in that litigation. Plaintiffs counter that insurance coverage was always an issue and cite to communications between the Plaintiffs and the Crane Agency in May 1998, and again in March 2000.

There is no bright line test for when the actions of an insurer are considered in the ordinary course of business versus in anticipation of litigation. Instead, the privilege should be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997). There is no doubt that the communications sought were created after the limitation proceeding commenced, but it also appears that determining the extent and availability of coverage for an insured is clearly within the ordinary business actions of an insurer. As a baseline, any documents that would have been

8

created by the Crane Agency after any collision or accident regardless of pending litigation, are discoverable.

Defendants seek documents from the underwriting file of Navigators as well as the claims files of both Navigators and American Home. According to the privilege log, many of these documents involve communications generated by or sent to the Crane Agency. First, despite the fact that all documents were created after the accident, any communication between an insurer and an insurance broker for the insured that occurs after any accident, regardless of the threat of litigation is not covered under this doctrine because it is deemed part of the everyday course of business.

Second, work-product documents that are shared with third-parties are not covered by the work-product privilege. As discussed above, the common interest doctrine only extended the attorney-client privilege to documents which related to the pending litigation. Any document requested that was created by a third-party and shared with plaintiffs that was not related to the limitation of liability action is discoverable.

**C. Irrelevant Documents**

There are two sets of documents that plaintiffs claim are irrelevant. First, defendants seek documents related both to the issue of coverage for Captain Johnson but also issues of coverage for Johnson's employer Winterville. Plaintiffs claim that because, due to bankruptcy, Winterville is no longer at issue in this proceeding, the documents relating to coverage of Winterville are irrelevant. This Court disagrees.

American Milling hired Winterville to staff the M/V ANNE HOLLY. Winterville in turn hired Captain Johnson as the M/V ANNE HOLLY's captain. Winterville is an important link in the chain of coverage. Documents relating to Winterville's coverage may relate to, or have an

effect on, Captain Johnson's coverage. Therefore, this Court finds the documents relevant and discoverable, to the extent that they are not elsewhere protected.

Second, defendants seek documents that relate to the underlying limitation proceedings. This Court agrees that the only documents which are relevant are those that relate to the extent or application of insurance coverage for Captain Johnson and Winterville. Documents which do not relate to the present declaratory action regarding insurance coverage are not discoverable.

### D. Document Request No. 43

Document request No. 43 seeks the production of:

> Any and all documents, standards, guidelines, manuals, handbooks or other materials used, referred to, reviewed or considered by the Plaintiffs in the course of their business in interpreting or analyzing the terms included in their insurance policies.

Plaintiffs contend that this request is overbroad, does not distinguish between lines of insurance, and seeks information irrelevant to the case. This Court agrees with defendants' reasoning that any documents that plaintiffs might have relied on in making their coverage decision are relevant to this proceeding. The Court will, however, narrow the request to only those materials that pertain to the interpreting or analyzing of coverage terms in their insurance polices.

### E. Sufficiency of the Logs

Defendants present an argument that the privilege logs prepared by the plaintiffs fail to sufficiently describe the nature of the documents. This Court finds that the privilege log is adequate, however, some documents, as described by the privilege log, are not privileged. Plaintiffs are required to produce documents that are not privileged as discussed by this order. A new privilege log is to be submitted for any document still being withheld, clearly identifying the parties and the specific privilege being alleged.

### F. Federal Rule of Civil Procedure 26(b)(3)

Defendants argue that they are entitled to any communications regarding insurance coverage based on "substantial need" under Federal Rule of Civil Procedure 26(b)(3). This Court will not decide the merit of this argument without first reviewing arguments made for the lifting of privilege for specific documents. If there are documents withheld pursuant to this order that defendants feel should be turned over pursuant to this rule, defendants must present to this court arguments for the rules application to specific documents or document categories.

### III. Conclusion

This Court orders that plaintiffs turn over any remaining discoverable documents in accordance with this order. If defendants still maintain objections to the claims of privilege they may resubmit to this Court objections to specific documents detailing the parties involved in the communication and arguments for the inapplicability of the claimed privilege. At that point, this Court will review any remaining objections and decide if an *in camera* review of the documents is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel (#56) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that plaintiffs turn over all requested documents that are not privileged as set out in this memorandum.

**IT IS FURTHER ORDERED** that plaintiffs produce to defendants all materials requested in document request No. 43 to the extent they relate to interpreting or analyzing coverage terms.

**IT IS FURTHER ORDERED** that plaintiffs shall provide an updated privilege log for any documents not produced under this order.

Dated this  24th  day of February, 2009.

                                             UNITED STATES DISTRICT JUDGE