UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NAVIGATORS MANAGEMENT       )
COMPANY, INC., et al.        )
                            )
            Plaintiffs,      )
                            )
        vs.                  )        Case No. 4:06CV01722 SNLJ
                            )
ST. PAUL FIRE and MARINE     )
INSURANCE COMPANY, et al.    )
                            )
            Defendants.      )

**MEMORANDUM AND ORDER**

This maritime insurance coverage case is before the Court on third-party defendants The

Charles L. Crane Agency (Crane) and Wells Fargo Insurance Services, Inc.'s motions to dismiss,

#169 and #173, respectively, which now are fully briefed by the parties.  Both third-party

defendants claim that the counts for breach of contract and negligence pleaded against them in

The American Milling Company's third-party complaint, filed May 25, 2011, should be

dismissed as time-barred due to the expiration of the statute of limitations and/or due to laches.

I.

The case arose from a maritime casualty on April 4, 1998, involving a Mississippi River

towboat known as the M/V Anne Holly that struck the President Riverboat Casino at St. Louis

causing significant property damage to the facility and personal injuries to the patrons.  The Anne

Holly was owned by American Milling and operated by defendant Winterville Marine Services

(which is now in bankruptcy).  American Milling and Winterville soon filed Limitation of

Liability suits that eventually resulted in a judgment that Winterville was not entitled to a

limitation of liability, thus exposing it to millions of dollars in damages from the allision.  On

August 7, 2003, while the limitation of liability actions were still pending, Winterville executed a release in favor of American Milling releasing American Milling from liability for any failure to fulfill its contractual obligation to obtain Bumbershoot insurance (excess liability insurance) for Winterville.  In return, American Milling added Winterville to the limitation bond it had posted and agreed to pay Winterville's legal fees in the appellate court.  Then in 2007, Winterville's trustee in bankruptcy filed this suit against American Milling (now consolidated with related suits brought by other insurers) to set aside the release as a fraudulent conveyance and to seek damages from American Milling for its alleged failure to obtain the Bumbershoot policy.

The basis of American Milling's third party complaint is that Crane and Wells Fargo (as successor to Acordia of Pittsburgh) were insurance brokers with which American Milling contracted to obtain Bumbershoot coverage for Winterville that would have covered the April 4, 1998 allision, and that the brokers failed to do so.  As a result of that alleged failure, American Milling claims that Crane and Wells Fargo should be liable for damages or be required to indemnify American Milling in the event that Winterville succeeds in voiding the release and obtains judgment against American Milling for breach of its agreement to obtain the Bumbershoot coverage.  American Milling's third party claims against Crane and Wells Fargo, then, are both for breach of their separate contracts to obtain the coverage and for their negligence in failing to do so.

II.

American Milling's initial response to Crane and Wells Fargo's argument that the third party complaint is time-barred is that the remedy sought is indemnification and that a cause of action for indemnification cannot accrue so to start the running of the statute of limitations until

judgment is entered in favor of Winterville and against American Milling, the party to be

indemnified. *See Central Soya Co. v. Economy Boat Store*, 411 F.Supp. 214, 214 (E.D. Mo.

1976) ("cause of action for indemnity does not rise until there has been a judgment entered

against the indemnitee").   At the outset, American Milling acknowledges that there is no express

contract for indemnification but relies instead on the doctrine of implied contractual indemnity, a

doctrine that has long been recognized both under Missouri law and under maritime law.  *State*

*ex rel. Manchester Ins. and Indemn. Co. v. Moss*, 522 S.W.2d 772, 774 (Mo. banc 1975);

*Denny's Inc. v. Avesta Enterprises, Ltd.*, 884 S.W.2d 281, 290-91 (Mo. App. 1994); *City of St.*

*Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 30 (Mo. App. 1983) (all Missouri law);

*Ryan Stevedor. Co. v. Pan-Atlantic Steam. Corp.*, 350 U.S. 124 (1956) (maritime law).  Under

Missouri law, the doctrine can be invoked where an indemnitee and indemnitor have co-

extensive identical duties.  *See, e.g.*, *Global Petromarine v. G. T. Sales & Manufacturing, Inc.*,

577 F.3d 839, 846 (8th Cir. 2009); *State ex rel. Manchester Ins. and Indemn. Co. v. Moss*, 522

S.W.2d 772, 774; *Denny's Inc.*, 884 S.W.2d at 290-91; *City of St. Joseph*, 660 S.W.2d at 30.  Co-

extensive identical duties exist where the performance of one duty discharges the performance of

the other. *Id*.

   Whether the parties do indeed have co-extensive identical duties is the main point of

disagreement between American Milling and Crane.  American Milling maintains that Crane's

performance of the obligation to obtain a Bumbershoot policy for Winterville[1] would have

discharged American Milling's obligation to do the same, just as American Milling's

---

[1]Winterville clearly was a third party beneficiary to the agreement between American
Milling and Crane, despite the latter's objections to that characterization.

independent performance of the obligation to obtain the policy would have discharged Crane's performance.  To the contrary, Crane argues that the duties are different because, as an insurance broker, it had no duty to guarantee insurance coverage but only "to exercise reasonable skill, care, and diligence in obtaining the requested insurance, or to timely notify the client if the requested insurance could not be obtained."  *See Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 225 (Mo. App. 1998); *Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 84 (Mo. App. 1994).  Under these principles, Crane theoretically could fail to obtain the insurance policy but still be said to have fully performed its duties.  In contrast, Crane explains, American Milling was required under its contract with Winterville to obtain the insurance coverage without fail, and it would be in breach of its contract with Winterville if it did not obtain the insurance regardless of the reason for that failure.  Although this is a subtle and technical difference, Crane has made a sufficient showing that the difference is real.  For this reason, this Court finds that Crane and American Milling did not have the kind of co-extensive identical duties necessary to establish implied contractual idemnity.

With respect to American Milling's claim of indemnity against Wells Fargo, the issue is complicated by the fact that the contract between those parties to obtain the Bumbershoot policy is not controlled by Missouri law.  Wells Fargo argues that the contract is to be construed under Pennsylvania law, which does not recognize implied contractual indemnity, while American Milling maintains that the contract is to be construed under maritime law, which does recognize implied contractual indemnity.   This Court determines, however, that the difference is immaterial because even if maritime law controls, the elements of implied contractual indemnity have not been met.  Although neither the parties nor this Court has found any cases that identify

-4-

the requirements for implied indemnity in similar contexts, maritime law routinely borrows from common law, *see East River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 864-65 (1986), and therefore it is appropriate to borrow from the common law of Missouri as this Court has applied it in the same dispute between American Milling and Crane.  Accordingly, indemnity must be based on co-extensive identical duties  --  duties that exist such that the performance of one duty would discharge the performance of the other.   The duty of the insurance broker, Wells Fargo, like that of Crane, is only to exercise reasonable skill, care and diligence in obtaining the requested insurance, or to timely notify the client if the insurance could not be obtained.  In contrast, the duty of American Milling to obtain the requested insurance must be met without fail.  Because the duties are different, there can be no implied contractual indemnity.

III.

In the absence of the remedy of indemnification, American Milling may only seek common law damages, but Crane and Wells Fargo's defenses of the statute of limitations and laches still turn on a determination of when the causes of action for breach of contract and negligence accrued against them.  As a preliminary matter, American Milling contends that determination is fact-specific, that it requires further discovery, and that it would be inappropriate to raise the issue by way of a motion for summary judgment rather than a motion to dismiss. However, as will be explained, that determination, at least as to the application of the statute of limitations, can be made simply by reference to the pleadings alone, so to that extent a motion to dismiss is indeed the appropriate mechanism to raise the issue.

Although there is some disagreement, the great weight of authority is that a cause of action for breach of contract for failing to obtain maritime insurance is a maritime contract.  *See*,

*e.g.*, *Fernandez III v. B. Haynie*, 120 F.Supp. 2d 575 (E.D. Va. 2000) (collecting cases).  As

such, the timeliness of the claim is governed by the doctrine of laches.  *See Azalea Fleet, Inc. v.*

*Dreyfus Supply & Machinery Corp.*, 782 F.2d 1455, 1458 (8th Cir. 1986); *Vollmar Bros. Const.*

*Co. v. Archway Fleeting & Harbor Service, Inc.*, 596 F. Supp. 112, 117-18 (E.D.Mo. 1994).

"The application of the doctrine is within the sound discretion of the district court."  *Id*.  There

are two parts to the laches analysis.  First, the court considers whether the "plaintiff's delay in

filing its suit was unreasonable."  *Azalea*, 782 F.2d at 1458.  Second, the court considers the

degree to which the defendant was prejudiced by the delay.  *Id*.  Local limitations statutes are

used as a guide to determine the presence or absence of prejudice and inexcusable delay.  *Venus*

*Lines Agency, Inc. v. CVG International American, Inc.*, 234 F.3d 1225, 1230 (8th Cir. 2004).

Furthermore, if the statute has run, prejudice by reason of inexcusable delay is presumed and the

burden shifts to the party bringing the claim to show that no prejudice has occurred.  *Id*.

     The local statute of limitations for the purported breach of contract by Crane is the

Missouri statute, which is five years, § 516.120 RSMo; and the local statute for breach of

contract by Wells Fargo is the Pennsylvania statute, which is four years, 42 Pa. C.S.A. § 5525.  In

Missouri, "The cause of action shall not be deemed to have accrued when the wrong is done or

the technical breach of contract or duty occurs, but when the damage resulting therefrom is

sustained and capable of ascertainment."  § 516.100 RSMo.  Damage is capable of ascertainment

when the fact of damage is known or discovered, but only "[s]ome damage for some amount is

all that is necessary to trigger accrual of a cause of action." *Ferrellgas, Inc. v. Edward A.Smith*

*P.C.*, 190 S.W.3d 615, 620 (Mo. App. 2006)  Although Wells Fargo's citation to the

corresponding Pennsylvania law is less clear, Wells Fargo maintains that "no conflict of law

-6-

exists" for the accrual date of the statute of limitations between Pennsylvania law and Missouri law, and American Milling does not disagree.

Crane and Wells Fargo argue that the statutes of limitations were triggered in 1998 when the alleged breaches of contract occurred, or at least in 2003 when American Milling reached a settlement with Winterville.  At the other extreme, American Milling contends  --  in the same way as its argument in favor of implied indemnity  --   that the statutes of limitations have not yet been triggered because American Milling has not yet suffered damages.  Although there is no indication in the pleadings that American Milling suffered damages at the time of the breaches in 1998, damages certainly were sustained in 2003.  As noted, on August 7, 2003, Winterville executed a release in favor of American Milling releasing American Milling from liability for any failure to obtain the Bumbershoot insurance, and in return, American Milling added Winterville to the bond it had posted in the limitation of liability actions and agreed to pay Winterville's legal fees on the appeal of the case.  Clearly, American Milling suffered damages that were capable of ascertainment in the fulfillment of its obligations to Winterville in return for the release agreement.  American Milling's only response is that "[its] underwriters, not American Milling, paid to defend Winterville's appeal and arranged to add Winterville to the limitation bond."  This point, however, is wholly disingenuous because it was American Milling's responsibility in the first place to make good on those obligations, and the fact that American Milling then turned to its own insurers to fulfill the obligations on American Milling's behalf  is irrelevant.  Accordingly, this Court finds that American Milling suffered damages in connection with the 2003 release agreement, that the statutes of limitations ran from that time, and that the limitations periods expired years before American Milling filed its third party claims

in this case.

Having determined that the statutes of limitations have run, the presumption sets in that defendants have been prejudiced by reason of inexcusable delay and that the doctrine of laches should apply.   That is not the end of the inquiry, however, because American Milling is entitled to offer evidence to counter the presumption.  In that regard, all parties have offered considerable evidence from the record on the question of whether defendants were indeed prejudiced by reason of inexcusable delay, and from that evidence it appears that the presumption has not been overcome.  But without deciding the issue, given the fact that the parties have offered evidence outside of the pleadings, this Court is compelled under Rule 12(d) to convert the motion in this limited respect to a motion for summary judgment, and under that Rule "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  So there is no misunderstanding, this Court has determined as a matter of law from the face of the pleadings that the local statutes of limitations for breach of contract have run, but whether American Milling can rebut the presumption of prejudice by reason of inexcusable delay so to defeat the defense of laches is still a fact issue that must be addressed via a motion for summary judgment rather than a motion to dismiss.

Regarding the causes of action for negligence in failing to obtain the Bumbershoot insurance, the parties agree that the actions are not maritime claims and that the state statutes of limitations apply instead of the doctrine of laches.  The Missouri statute of limitations for negligence on the claim against Crane is five years, § 516.120 RSMo.; and the Pennsylvania statute of limitations for negligence on the claim against Wells Fargo is two years, 42 Pa. C.S.A. § 5524(7).  The same analysis applies as that  in the determination of the running of the statutes

of limitations for the breach of contract claims, and the result is the same.  As a matter of law, on the face of the pleadings, the statutes of limitations were triggered when the release agreement with Winterville was executed on August 7, 2003, and the limitations periods expired years before these third party claims were filed.  Unlike the breach of contract claims that are subject to the doctrine of laches, no further evidence is needed to resolve the claims for negligence, and dismissal on those counts will be granted.

IV.

For the foregoing reasons, Wells Fargo's motion to dismiss Count I and Crane's motion to dismiss Count III, both for breach of contract, are converted to motions for summary judgment, but only on the factual issue of whether the presumption of prejudice by reason of inexcusable delay under the doctrine of laches has been overcome, and the parties are ordered to proceed under Rule 56.  Wells Fargo's motion to dismiss Count II and Crane's motion to dismiss Count IV both for negligence, are **GRANTED**.

**SO ORDERED** this 15th day of December, 2011.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE